# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| LISA BLOYER, )<br>o/b/o W.B., a minor, )<br>            Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN COLVIN, Acting )<br>Commissioner of Social Security, )<br>            Defendant. ) | No. 13 CV 50356<br>Magistrate Judge Iain D. Johnston |

## MEMORANDUM OPINION AND ORDER

This is a social security appeal. For the reasons explained below, the case is remanded.

## BACKGROUND

W.B. was born on April 1, 1997. R. 117. In the first grade, he began receiving special education services for learning disabilities. R. 46. In the summer of 2008, W.B. began seeing a psychologist, Dan Griffith, who saw W.B. over the next year and performed various tests. He ruled out autism and attention deficit hyperactivity disorder (ADHD) but diagnosed W.B. with sensory modulation disorder, a learning disorder, and an anxiety disorder. R. 46.

In 2010, W.B. was reassessed for his Individualized Education Program (IEP). He was evaluated by Dr. John Suter (a school psychologist), Dala Utech (an educational diagnostician), Susan Kelley (school social worker), and some of his teachers. R. 46-47. They noted that W.B. had poor reading, math, and writing skills; problems with peer relationships; problems concentrating and completing work; and problems with organization and time management. R. 47. Although he was in the seventh grade, he was reading at a fourth grade level and writing at a second grade level. R. 48.

In January 2011, W.B. was again assessed by school officials because of problems at school. A psychologist, Mark Langgut, examined W.B. and issued a report, concluding that W.B. had a dysthymic disorder, a learning disorder, and an auditory processing disorder. R. 49. Later in 2011, W.B.'s mother decided to homeschool him because W.B. was afraid of going to school and was struggling despite receiving special education services. R. 15. In the fall of 2011, psychologist David Wakely diagnosed W.B. with panic disorder. R. 356-357. W.B. began taking Zoloft which helped relieve some anxiety symptoms. R. 366.

After W.B.'s social security application was denied initially, a hearing was held before an administrative law judge (ALJ) on July 23, 2012. W.B. and his mother testified. On August 3, 2012, the ALJ issued a 17-page decision finding W.B. was not disabled.

Applying the three-step process used to determine if an individual under 18 years of age is disabled (20 C.F.R. 416.924(a)), the ALJ first found that W.B. had severe impairments, including an anxiety disorder, a sensory modulation disorder; a dysthymic disorder; a learning disorder; and morbid obesity. R. 41-43. At step two, the ALJ concluded that these impairments did not meet a listed impairment. *Id.* Relevant to this appeal, the ALJ concluded that W.B.'s anxiety disorder and sensory modulation disorder did not meet the listing for anxiety disorders, under Section 112.06. At the third step, the ALJ assessed whether W.B.'s impairments functionally equaled a listing. R. 44. As required by the regulations, the ALJ assessed W.B. in each of six domains. R. 41. To functionally equal a listing, a claimant's impairments must result in "marked" limitations in at least two domains or an "extreme" limitation in one. R. 41 (citing 20 C.F.R. 416.926a(d)). The ALJ found that W.B. had a "marked" limitation only in the domain of "interacting and relating with others." R. 52-53.

**DISCUSSION**

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). If the Commissioner's decision lacks evidentiary support or adequate discussion, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

In this appeal, W.B. argues that the ALJ failed to explain why W.B.'s impairments did not meet the listing for "anxiety disorders" and also why he did not have a "marked" limitation in the domain "attending and completing tasks." This Court agrees with both arguments.

Section 112.06 sets forth the requirements for "Anxiety Disorders." Although it contains multiple parts, the relevant issue here is whether W.B. qualifies based on a "persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation." In this case, the specific feared object is school. To support his claim, W.B. relies on evidence from his doctors and teachers. *See* Pl. Mem. at 3, 6. His mother began homeschooling him in 2011 because of his anxiety about school. Also in 2011, Dr. Wakely diagnosed him with panic disorder.

This Court need not sort through this evidence because the ALJ never analyzed any of it. In concluding that W.B.'s anxiety did not meet this listing requirement, the ALJ merely quoted the language of Section 112.06 in one long sentence. *See* R. 43 (last paragraph). She provided *no* analysis and did not address the "fear of school" argument. This Court therefore cannot assess the ALJ's reasoning. On this basis alone, a remand is warranted.

Plaintiff's second argument also justifies a remand. Plaintiff argues that the ALJ failed to sufficiently explain why W.B. did not have a "marked" limitation in the domain of "attending and completing tasks." Here is the ALJ's explanation:

> The claimant has less than marked limitation in attending and completing tasks. The claimant, his mother, and teachers all stated that he does have trouble focusing and completing schoolwork. He also lost attention during examinations and needed prompts for motivation and redirection. His inability to focus[,] however, did not lead to an attention deficit disorder or attention deficit hyperactivity disorder diagnosis. The claimant was also not hyperactive in class or at home, and he does not require stimulant medication. Moreover, the claimant's teacher remarked that he has no problem sustaining attention during play or paying attention when spoken to directly. The claimant has no behavior problems and does not normally distract others. He is often also able to be redirected with prompts (Exhibits 4E, 5E 9E, 2F, 7F).

R. 52.

This explanation is insufficient. Taken on its own terms, it rests on the flawed assumption that if W.B. was not diagnosed with ADHD, then he could not have marked limitations in attending and completing tasks. The Seventh Circuit has specifically rejected this assumption. *See Giles v. Astrue*, 483 F.3d 483, 488 (7th Cir. 2007) (noting many causes of attention problems are unrelated to ADHD and faulting the ALJ for assuming that "because [the claimant] was not diagnosed with ADHD, his attention problems could not have been 'marked'"). Dr. Griffith, who treated W.B. for over a year, recognized this same point:

> Although [W.B.] has difficulty at times focusing his attention and regulating his activity level, his pattern of difficulties [is] not consistent with a diagnosis of ADHD. Rather [W.B.'s] attention difficulties and self-regulatory difficulties are more consistent with

diagnoses of sensory modulation disorder-low threshold type and learning disability-not otherwise specified. Based on the high levels of anxiety that [W.B.] experiences as he attempts to process the information that he receives in complex environments, [W.B.] also qualifies for a diagnosis of anxiety disorder-not otherwise specified.

R. 180. The ALJ failed to consider that a no-ADHD diagnosis does not preclude a finding that a claimant has marked limitations in this domain.

The ALJ also found it significant that W.B. did not have problems paying attention "during play" or "when spoken to directly." But these facts do not show that W.B. could function properly in a normal academic environment. Playing a game at recess presumably requires less concentration and is judged by easier standards than learning algebra in a classroom. Similarly, it is unrealistic to think that teachers in a classroom could constantly speak to W.B. directly. The evidence, as summarized below, suggests that W.B. needed "frequent redirection" and "continual prompts." This suggests something more than an occasional restatement of a point misheard during a class lecture.

More broadly, the ALJ's analysis does not acknowledge much evidence bearing on W.B.'s alleged attention problems. This evidence includes the following:

- In August 2008, Dr. Griffith observed that W.B. "demonstrated a slow processing speed, often requiring several minutes before giving his response" and that he had "obvious difficulty at times processing and organizing verbal auditory information." R. 176.

- In January 2010, John Suter, school psychologist, stated that W.B. "has significant difficulties maintaining attention to task in class and can become easily overwhelmed." R. 188.

- In January 2010, Dala E. Utech, an educational diagnostician, stated that W.B. "requires think time to process information and formulate a response." R. 195.

- In February 2010, Susan Kelley, a school social worker, stated that W.B. "failed all core academic subjects term two;" that his teachers indicated that he "needs frequent redirection to task and he has problems completing work and homework;" and that he "appears overwhelmed and frustrated in class." R. 189-190.

- In a January 2011 letter, several teachers reported that W.B. "needs continual prompts in order to stay motivated in completing tasks." R. 182.

- In January 2011, Mark Bartscher, a teacher, stated in a questionnaire that W.B. "has difficulty staying focused and staying on task" and that he "has difficulty with class participation and work completion." R. 202.

- In January 2011, Mark Langgut, a clinical psychologist, observed that W.B. "had difficulty with attention during the evaluation of his mental capacity." R. 310.

- Psychologist Michael Brown noted that W.B.'s "concentration was poor." R. 48.

- As summarized in the ALJ's opinion, W.B. testified at the hearing that he had "trouble following directions in school and often gets upset when working in groups because things sound garbled to him;" that "it takes him longer to complete homework assignments because he must re-read everything and have others explain it to him until he understands the assignment;" and that he "is unable to multitask or follow instructions without guidance and frequent redirection[.]" R. 45.

- W.B. was behind several grades in school even though he was in special education classes.

Although the ALJ summarized some of this evidence in her fairly lengthy background section, she never returned to it when she analyzed the issue of whether W.B. had a marked limitation in the domain of attending and completing tasks. Accordingly, this Court cannot know how she interpreted this evidence.

Related to this point, the ALJ also failed to follow the treating physician rule. This rule is based on 20 C.F.R. §404.1527(c)(2). Under this section, a treating physician's opinion is entitled to controlling weight if it is supported by medical findings and consistent with other substantial evidence in the record. *Id.*; *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014). If the ALJ does not give the treating physician's opinion controlling weight, the ALJ cannot simply disregard it without further analysis. *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010). Instead, the ALJ must determine what specific weight, if any, the opinion should be given. *Moss v. Astrue¸* 555 F.3d 556, 561 (7th Cir. 2009). To make this determination, the ALJ must apply

the checklist of factors set forth in 20 C.F.R. § 404.1527(c)(2). *Campbell*, 627 F.3d at 308 (referring to the factors as a "required checklist"); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). The factors are: (1) the length of treatment; (2) the nature and extent of the treatment relationship; (3) the supportability of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) the physician's degree of specialization; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(6).

Here, the ALJ did not apply the checklist, nor explain what weight she gave to W.B.'s treating physicians' opinions, and at the same time she gave "great weight" to two state psychologists who did not treat or examine him. Here is the ALJ's explanation for the latter conclusion:

> The State agency psychologists opined that the claimant's impairments are severe, but they do not meet, medically equal, or functionally equal a listed section (Exhibits 3F, 4F). The undersigned gives great weight to these opinions because the State agency physicians are both psychological specialists, and their opinions are consistent with the claimant' [sic]

R. 50. There is obviously a typo as paragraph ends mid-sentence, suggesting that the ALJ may have intended to provide further explanation. However, this Court can only analyze what is given above. This explanation is conclusory. Further elaboration is needed, particularly because the reports from these two psychologists are ambiguous. Psychologist Phyllis Brister checked the box "less than marked" for the domain of "attending and completing tasks" and then provided only this explanation: "Difficulty staying on task and task completion." R. 314. Why does this description lead to a conclusion of "less than marked" instead of "marked"? Likewise, the other evaluator, psychologist Ronald Havens, provided this explanation:

> At the 1/2011 psych CE [W.B.] was noted to have difficulty with attention during mental capacity evaluation. R/O ADHD is noted as a DX. TQ notes very serious problem working at a reasonable pace and a serious problem completing assignments.

R. 320. Again, it is not clear why this description—in particular, that W.B. had "a serious problem completing assignments"—would not support a "marked" limitation in completing tasks.

In crediting the two agency physicians, the ALJ never indicated what weight, if any, she gave to W.B.'s treating physicians. In particular, Dr. Dan Griffith treated W.B. for over a year, from 2008 to 2009, performed a number of diagnostic tests on W.B.'s hearing and other functions, and issued two detailed reports. Although the ALJ referred to some of Dr. Griffith's observations in the fact section of her opinion, she never later explained whether she agreed with them, nor reconciled how they fit with the overall medical evidence or the opinions of the two state physicians.

In conclusion, the ALJ failed to build a "logical bridge" to enable this Court to trace the path of her reasoning. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). Because this case will be remanded, this Court need not analyze the other arguments for remand such as those relating to noise being a trigger, obesity, and the effect of certain medications. The ALJ, however, should consider the complete record on remand.

## **CONCLUSION**

For the reasons given, plaintiff's motion for summary judgment is granted, the government's motion is denied, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

Date: January 6, 2015          By:
                                  Iain D. Johnston
                                  United States Magistrate Judge